# SUPERIOR COURT.

## BENNETT agt. LE ROY.

No court in this state can rightfully enjoin a party from proceeding in a suit in another court of the state, having equal power to grant the relief sought by the complaint on which such injunction is asked.

If, in such a case, a party who has brought an action in one court be enjoined from proceeding further therein by an injunction issued from another court of co-ordinate powers, and if he proceed, notwithstanding such injunction, his proceedings will not be set aside for that cause, as *irregular*.

But, in furtherance of justice, the party prejudiced by them will be relieved on such terms as may be just; but only upon consenting to a dissolution of the injunction, so far as it may interfere with the further prosecution of such action.

*Special Term, June* 30, 1857.

THIS action was commenced about the second of February, 1857, upon a contract of defendant to pay to the plaintiff a certain annual sum for life, in quarterly payments, to recover three quarterly instalments. A judgment having been entered for want of an answer, it was vacated, on defendant's motion, on the 21st of March, and liberty was given to defendant to put in an answer on terms.

On the 24th of April, the defendant commenced an action as plaintiff, in the supreme court for this district. His complaint contained allegations which, if true, it is insisted, are a bar to this action, and also entitle Le Roy to a judgment, that the contract on which this action is brought be declared to be void, and that it be surrendered to him.

In that complaint other allegations are contained, which, Le Roy insists, entitle him to a further judgment, that the present plaintiff reconvey to him a house and lot in Twelfth-street, which he heretofore conveyed to the plaintiff. Le Roy, on that complaint and other papers, obtained an injunction from a justice of the supreme court, enjoining the plaintiff in this action from further prosecuting the same, until the further order of the supreme court.

That injunction was served on the plaintiff in this action on the 25th of April, and on or about the same day was exhibited to her attorney herein.

On the 18th of June, instant, a judgment was again entered in this action for the plaintiff for the amount claimed, no answer having been interposed to the complaint. The injunction granted in the action in the supreme court has not been modified or vacated.

The defendant, Le Roy, now moves to vacate said judgment, because it was entered while such injunction was in force, and after it had been served, and if that cause alone is not deemed sufficient, then upon such terms as this court may deem it just to impose as a condition to such relief, and to granting to him the privilege of putting in an answer.

JAS. S. CARPENTIER *and* E. P. COWLES, *for plaintiff*.
J. LAROCQUE, *for defendant*.

BOSWORTH, Justice. It is not contended that the injunction obtained by Le Roy out of the supreme court, makes the judgment which has been entered in this court irregular.

Prior to the existing system of practice, when equity and legal jurisdiction was conferred on distinct tribunals, it was settled that an injunction from the court of chancery, enjoining a plaintiff in an action in the supreme court from proceeding further therein, did not have the effect to make any proceedings which such plaintiff might take in the action at law, in disregard of such injunction, irregular; the supreme court would not set them aside on that ground, although it would relieve against them in furtherance of justice.

The injunction, in such a case, is directed to the suitor and his attorneys and agents, and not to the court of law. The plaintiff at law might proceed, at the peril of being compelled by the court of chancery to justify his acts, or pay the penalty of proceeding contrary to the injunction.

Under this system, when equity was administered by the court of chancery alone, it often happened that a defendant, in

an action at law, could prove facts which at law would be no defence, but which in a court of equity would either preclude the plaintiff at law from recovering anything, or would entitle the defendant therein to relief, which a court of law could not grant.

Hence, under that system, it might be eminently proper for a court of law, in some cases, to decline trying an action which the plaintiff had been enjoined by the court of chancery from further prosecuting, without the permission of that court.

But such cases, instead of falling within, or constituting a general rule, were regarded by the supreme court as exceptions. The general rule was, that the supreme court would not notice an injunction as a matter which should influence its own practice in the cause to which it related. (*Burt* agt. *Mapes*, 1 *Hill*, 648.)

Under the existing constitution and judiciary system, courts of record are competent to grant to a plaintiff or defendant any relief, either legal or equitable, to which the facts proved and embraced within the issues made by the pleadings entitle him.

There is, therefore, no occasion now for one court, even if it had the power, to enjoin proceedings in another court of coordinate jurisdiction, and compel one who has brought an action in the latter to litigate it before a different tribunal.

Whether an action be brought in the supreme court or in the common pleas of this city, or in this court, each court has as ample power as either of the others to try any issues of fact, which may be set up as a defence, or as a basis of affirmative relief.

When an action has been brought in either, it is not obvious on what considerations of public policy, or of justice to individuals, the defendant should be permitted, instead of litigating and settling the controversy in the court in which the action may have been brought, to commence an action in one of the other courts in respect to the same matters, and stay proceedings in the first action until the second shall have been determined.

Such a course would, in many instances delay final judgment.

The issue in the second action would be later in date than one joined in the first at the time an answer would be due. If the second action was brought in a court having more undecided causes pending in it, a trial could not be anticipated as speedily as in a court less crowded with business.

If it shall be held, that it is purely discretionary with the court whether it will order issues in actions which, by § 254 of the Code, are triable by the court, then such a practice, if sanctioned, would enable a defendant, by making matters properly pleadable as a defence and counter-claim, the subject of an action in his own favor as plaintiff, to deprive the plaintiff in the action first commenced of the right to a trial by jury.

This court held, in *Grant* agt. *Quick*, (5 *Sand.* 612,) and decided March 6, 1852, that "no court in this state can rightfully enjoin a defendant from proceeding in a suit in another court of this state, having equal power to grant the relief sought by the complaint."

In that case, Grant brought an action in this court, and obtained an injunction restraining Quick from attempting to enforce certain agreements mentioned in the complaint. On motion, and on its being shown to this court, that at the time the injunction was granted a suit, which had been commenced by *Quick* agt. *Grant*, was pending in the common pleas on one of those agreements, this court dissolved the injunction. Mr. Justice DUER said, "It is in the common pleas that the controversy was commenced, and it is there that it ought to be terminated. The prior jurisdiction which that court has acquired over it I have no right, and will not attempt to disturb."

The opinion concludes with this statement: "At a joint meeting of the judges of the supreme court, of the common pleas, and of this court, which was had shortly after the above decision, it was communicated by DUER, Justice, and unanimously approved."

So far as it respects cases which have come to my knowledge, this court has uniformly acted on that rule.

It was suggested, on the argument of this motion, that Le Roy commenced the action in the supreme court on the strength

of some rumored impressions that this court has no jurisdiction of an equity suit, and that the provisions of the Code which confer it are *unconstitutional.*

Whether such considerations had any weight with the learned justice who granted the injunction, the papers do not disclose.

It is known that three judges of this court, for a long period, under the peremptory requirements of statutory law, devoted their attention exclusively to the trial and decision of equity suits commenced in the late court of chancery. Since the Code took effect, suits of that character, and of great magnitude, have crowded its calendars. Many have been tried; and the decisions of this court, in some of them, have been reviewed by the court of appeals.

I have not noticed the suggestion of a doubt, by any member of that court, of the jurisdiction of this court in such cases.

In the case of *The Attorney-General, &c.* agt. *The Mayor of New-York,* (2 *Duer,* 127,) the point was taken that "this court has no jurisdiction of an action against the corporation of New-York, upon the cause of action stated in the complaint." That was an equity suit.

The same point was made in this court, and in the court of appeals, on the proceedings against the defendants for disobeying the injunction. When those proceedings were before the court of appeals on an appeal from an order of this court, the former, in the opinion given in support of its order of affirmance, held this language : "The jurisdiction of the superior court is as wide as the definition of an action under the Code, and that is defined to be 'an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong.'" (2 *Duer,* 160.)

I deem it more reasonable to conclude that the injunction was granted for the reason that Le Roy's complaint stated one cause of action, which would be no defence to the one in this court, and a cause of action which, it is by no means clear, could be litigated in this action, viz., the claim to have the house and lot in Twelfth-street reconveyed to him.

Bennett agt. Le Roy.

And the learned justice may have thought that, substantially the same evidence, in most of its details, by which that cause of action was to be sustained, if at all, would be relied on as a defence to this action, and to establish the facts on which a cancellation and surrender of the contract is sought, on which this action is brought, and that, by trying both matters in one action, the labor and preparation of one trial might be avoided.

Yet it is evident that the principles and considerations on which a reconveyance of the house in Twelfth-street will be urged or opposed, may be quite distinct from those on which the cancellation of the contract in question may be claimed— or resisted.

It is not obvious why the trial of this action should be delayed by the trial of a cause of action not necessarily connected with it, nor why any judgment that may be rendered in respect to it should be subjected to the hazard of a reversal, by reason of errors which, notwithstanding the greatest care, may possibly be committed in disposing of the other, no matter by what court it may be tried.

The Code is quite explicit, that Le Roy can set up in his answer, in this action, not only as many defences as he has, but also that he may set up as many counter-claims as he may have, (*Code*, § 151,) whether they be such as have heretofore been denominated legal or equitable, or both.

As a counter-claim, he may set up any cause of action which he has against the plaintiff, "arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action." (*Code*, § 150, *sub*. 1.)

And this court may grant to him "any affirmative relief to which he may be entitled," on the facts so alleged, if they shall be established by evidence. (*Code*, § 274.)

As the plaintiff in this action has obtained a regular judgment, it can only be set aside on terms.

It may be set aside, and the defendant allowed to answer in twenty days, on payment by him, within that time, of the costs of entering the judgment, and of subsequent proceedings there-

on, including the sheriff's fees on the execution issued on such judgment, and $10 costs of opposing this motion; and on serving, with the answer, a stipulation that an order be entered, in the action in the supreme court, so far modifying the injunction issued thereon as to leave the plaintiff in this action at liberty to proceed therein, the issue to be of a date at which an answer was originally due.

If the defendant does not avail himself of these conditions, by complying therewith, this motion is denied with $10 costs.