SAMUEL WEEKS et al., Respondents, v. JACOB WEEKS et al.,
    CORNWELL et al., WILLIAM A. PARKE et al., Appellants.

The court has power to authorize a receiver appointed in a partition suit
    to lease the property, *pendente lite*.
To justify the receiver in applying for authority to lease, and the court
    in granting the application, it is not necessary that the power to lease
    shall be given in the order appointing the receiver, or that said order
    give him liberty to apply for instructions.
The court may authorize a lease for a term certain, the ordinary term of
    lease for such premises, although it may extend beyond the termination
    of the litigation.
*It seems* that a lease beyond the customary term, which might extend
    beyond the litigation, would be an unjustifiable exercise of judicial
    discretion.
Absence of notice to the parties of the application by the receiver for
    leave to lease is not a jurisdictional defect, and does not invalidate the
    order or the lease executed under it.
*It seems*, however, that notice should be required.
Where a lease has been executed by the receiver under an *ex parte* order
    of the court, for a term extending beyond the close of the litigation,
    the court has power to modify or vacate the order, although the rights
    of the lessee may be affected thereby.
In such case the court has power to award indemnity to the lessee as a
    condition of granting the motion to vacate or modify; and where the
    judgment directs a sale of the premises the court may direct the
    indemnity to be paid out of the fund arising on sale.
In a partition suit a receiver was appointed, with authority to lease
    the premises for the term of three years. About six months prior to
    the expiration of the leases, executed in pursuance of such authority,
    and pending an appeal to the General Term from the judgment in the
    action, upon an *ex parte* application of the receiver and on affidavits
    showing that the litigation would not be terminated until long after
    the expiration of the leases, the court made an order authorizing the
    receiver to lease for a further term of three years, that being generally
    the shortest term for which such property could be advantageously
    rented; leases were executed accordingly. The litigation was, in fact,
    closed within a year after the commencement of the second terms. On
    motion of the parties the *ex parte* order was modified so as to authorize
    a leasing for but one year, and the leases were declared invalid except
    for that period. *Held*, that the court had jurisdiction to make the *ex parte*
    order, and the fact that the litigation terminated within the first year of
    the new term did not affect its validity; also, that the court had power
    to modify the order, but as the leases were valid when executed and the

lessees acted in good faith in reliance upon the order, and as the parties had waited until final judgment before moving, with knowledge that the property was in the occupation of tenants after the expiration of the first leases, the tenants were entitled to indemnity

(Argued June 22, 1887; decided October 4, 1887.)

APPEAL by William A. Parke et al., tenants, from an order of the General Term of the Supreme Court in the first judicial department, made May 13, 1887, which affirmed with " costs and disbursements" against the appellants an order of Special Term, modifying a previous order, authorizing the execution of the leases under which the appellants claim, and directing the retention and deposit, subject to the further orders of the court, of a sum specified out of the proceeds of the sale of the premises described in the complaint.

This was an action for partition. The rights and interests of the parties were in dispute and a receiver, *pendente lite*, was appointed.

The facts material to the questions involved in this appeal are stated in the opinion.

*Edward M. Shepard* for appellants. The relief, if any, to which the moving parties were entitled, could not, as against them, not being parties to the action, be obtained upon motion or otherwise than by action. (*Hill* v. *Heermans*, 59 N. Y. 396.) The direction which the court gave the receiver by the order of October 19, 1885, was valid without formal notice to the parties of the receiver's application for the instruction of the court. (Thompson on Prov. Rem. 484, chap. 5, § 8; *Smith* v. *Stage Co.*, 28 How. 377; Wade on Law of Notice, § 1186; *Fischer* v. *Langbein*, 103 N. Y. 84; *Day* v. *Bach*, 87 id. 56.) The order appointing the receiver and the later order authorizing the present leases were part of the action and were fortified and protected by the *lis pendens*. (*Shreeve* v. *Hankinson*, 34 N. J. Eq. 413.) A receiver may, with the sanction of the judge, demise for terms of years. (*Dancer* v. *Hastings*, 4 Bing. 2; Kerr on Receivers, 210; *Ellicot* v. *U. S. Ins. Co.*, 7 Gill [Md.] 308; *Keeney* v. *Home*

*Ins. Co.*, 71 N. Y. 396; 2 Daniell's Ch. Pr. [4 Am. ed.]
1715, 16, 41; Story's Eq. Jur. § 831.)

*Flamen B. Candler* for respondents. The receiver, and
all the persons holding under him, as tenants, are bound by
the notice of the pendency of this action, filed April 24, 1882,
to the same extent as the parties to the action and all persons
claiming under them; and they are concluded from all interest
in the premises by the judgment of March 19, 1886, and by
the sale made thereunder. (Bennett on Lis Pendens, §§ 14,
15; *Becker* v. *Howard*, 47 How. Pr. 423.) The receiver
was appointed *pendente lite*, and his powers and duties must
be found in the order by which he was appointed. (*Foster* v.
*Townsend*, 68 N. Y. 203, 206; *Keeney* v. *Ins. Co.*, 71 id.
396-401; *Finke* v. *Finke*, 25 Hun, 616-618; *Green* v. *Winter*,
1 Johns. Ch. 60; *Bank* v. *White*, 6 Barb. 589-597; *Negus* v.
*Brooklyn*, 1 Code R. 471-483; *Verplank* v. *Ins. Co.*, 2 Paige,
438-452.) He was bound in law to give notice to all the
parties to the action before attempting to lease the property
for a term of years, and it was his duty to apply to the court
for further instructions under the order appointing him.
(Rule 192, Court of Chancery; Rule 78, Hun's Court Rules;
*Shreves* v. *Hankinson*, 34 N. J. Eq. 413; *Vincent* v. *Parker*,
7 Paige, 65; *Verplank* v. *Verplank*, 22 Hun, 104; *Foster* v.
*Townsend*, 68 N. Y. 206; *Lane* v. *Lutz*, 3 Abb. Ct. App.
Dec. 19; *Bolles* v. *Duff*, 37 How. Pr. 162-166.) The court,
at Special Term, had the power to modify the *ex parte* order
of October 19, 1885, and having exercised its power and dis-
cretion, and the order having been affirmed, this court should
not, upon all the facts in the case, disturb the same. (*In re
City Buffalo*, 78 N. Y. 362; 16 Hun, 49; *Dinsmore* v.
*Adams*, 48 How. Pr. 274; Code, § 724: *Bolles* v. *Duff*, 37
How. Pr. 162-166.)

ANDREWS, J. The order of February 6, 1883, appointing
the receiver in the action, was made on the petition of one
of the defendants, upon notice to the other parties, and was

granted without opposition. The property sought to be partitioned consisted of four houses and lots on Fifth avenue, in the city of New York, of great value, and the rights and interests of the several parties depended upon the construction of the will of Jacob Weeks, deceased, and involved the determination of complicated and difficult questions. The main object of the receivership was to secure the renting and care of the premises pending the litigation, for the benefit of the parties who should be adjudged to be vested with the legal title to the property. The order, therefore, authorized the receiver to lease the premises, or any part thereof, for a term not exceeding three years from May 1, 1883. The receiver, under the authority conferred, leased the several houses and lots at a large rent for terms expiring May 1, 1886. On the 19th of October, 1885, pending the appeal to the General Term from the judgment of the Special Term, the receiver, upon an affidavit stating that the action was pending on appeal to the General Term, and that he had been informed by the attorney therein that the case would be carried to the Court of Appeals, and that the case would not be finally determined till long after May 1, 1886, and also that unless he was empowered to renew the leases for another term the tenants might leave, and the houses remain untenanted after that date, applied *ex parte* to the court at Special Term for liberty to renew the leases, and the court thereupon made an order authorizing the receiver to lease the property "for a term or terms beginning from the 1st of May, 1886, and not extending beyond the 1st of May, 1889." The receiver thereupon renewed the leases to two of the tenants in possession for three years from May 1886, and granted a new lease of one of the houses and lots to a new tenant for the same term. The General Term, May 3, 1886, affirmed the judgment of the Special Term declaring the rights and interests of the several parties, and directing a sale of the premises. That judgment was affirmed by this court in February, 1887. The present appeal is from an order of the General Term affirming an order of the Special Term made after the affirm-

ance of the judgment by this court, upon the application of the parties to this action, modifying the order of October 19, 1885, so that it should stand as an order authorizing the leasing by the receiver for the term of one year only from May 1, 1886, and declaring that the leases executed by the receiver were valid only for the term of one year.

The first question relates to the jurisdiction of the court to grant an order on the application of a receiver, *ex parte*, without notice to the parties to the action, for the leasing of real property, which is the subject of the receivership, for a term certain which may extend beyond the termination of the litigation. It is well settled that a receiver cannot *ex mere motu* let the premises which he holds as receiver. "He cannot," said Lord THURLOW, "set and let, or make expenditures upon the estate, without an application to the court," and a lease granted by a receiver without the order of the court was held, in *Dunford* v. *Lane* (cited in 1 Bro. C. C 160), to be invalid. Formerly, under the English practice, a receiver was not ordinarily permitted to originate steps or proceedings on his own motion. The parties were left to make such application in the case as might be deemed necessary, although the rule was not absolute and applications were allowed to be made by the receiver under special circumstances. (*Ireland* v. *Eade*, 7 Beav. 55; *Parker* v. *Dunn*, 8 id. 497; *Wrixon* v. *Vize*, 5 Ir. Eq. 276.) In this country a broader view is taken, and it is common practice for receivers, on their own motion, to apply to the court for directions as to the execution of their duties. (High on Receivers, §§ 181, 188, and cases cited.) Orders appointing receivers usually contain a clause giving to the receiver liberty to apply to the court for instructions; and where real property is the subject of the receivership the order not infrequently confers the power to lease. We apprehend, however, that it is not necessary under our practice that the order appointing a receiver should contain these provisions in order to justify the receiver in applying for instructions, or the court in granting an application therefor, or in

authorizing the receiver to lease the property. It is said that the court has no power to authorize a receiver, *pendente lite*, to lease for a term certain, so as to make the lease valid beyond the period of the litigation. There can be no doubt, having in view the object of such receivership, which is to take the care and custody of the property and administer it during the litigation and to hold it to answer the final judgment in the action, that a lease beyond the customary term, according to the nature of the demised property, which might extend beyond the termination of the litigation, would be an unjustifiable exercise of judicial discretion. But to deny the power of the court to authorize a lease for a term certain in any case, or to hold that every lease so authorized is terminable, *ipso facto*, on the termination of the litigation, would, as was said in *Shreve* v. *Hankinson* (34 N. J. Eq. 413), often prevent any leasing of the property at all. It is customary to lease farms for not less than a year, and the better class of dwellings, especially where the tenant is to furnish, are usually let for a term certain. When such property is in the hands of a receiver, *pendente lite*, and the termination of the suit is uncertain, it would often result in great loss if the court had no power to authorize a lease for the customary term, except upon the consent of all the parties interested. The receiver is the officer of the court. In virtue of its general jurisdiction the court in a proper case assumes for the time being the care and custody of the property. The receiver represents all interests and under the direction of the court manages the property for the benefit of all concerned. The power of the court to authorize leases by a receiver for a term certain was recognized by rule 192 of the former court of chancery, in cases of receivers in creditors' suits, and is also recognized by the present rule of the Supreme Court (93) which permits a receiver to make leases, from time to time, as may be necessary, for terms not exceeding one year. In Daniel's Chancery Practice (4 Am. Ed. 749) it is said that "in an ordinary case a receiver may, in his discretion, let for a year or less, or for any term not exceeding three years,

without applying for the sanction of the judge." The power in England seems now to be regulated by general orders, and the language quoted is to be interpreted in view of this fact. The court, in making the order of October 19, 1885, did not, we think, transcend its power, in authorizing the receiver to lease for the term of three years, provided it could grant the order *ex parte*, without notice to the parties to the action. It appears, without contradiction, that three years was generally the shortest term, for which unfurnished houses of the description of those in question, could be advantageously rented in the city of New York. This was the term for which they were first rented, under the order appointing the receiver. The duration of the litigation was uncertain when the order of October 19, 1885, was made. The fact that it was terminated within the first year of the term does not affect the validity of the leases, provided the court had juristion to make the order under which they were executed. But it is insisted that, assuming that the court had power on notice to the parties interested, to make an order authorizing the receiver to lease the property for a term certain, it had no power without notice to them, or giving them an opportunity to be heard, to bind the property by leases extending beyond the termination of the litigation. We are of opinion that the absence of notice to the parties of the application, by the receiver, was not a jurisdictional defect rendering the order made thereon void. The question in this aspect is one of power, and not of propriety. We cannot doubt that if the attention of the judge had been called to the subject, he would not have made so important an order, without notice, to the parties to the litigation. The English courts, as we have seen, are very reluctant to entertain applications made by a receiver in an action, without the presence or intervention of the parties, and a wise discretion dictates the reasonableness of requiring a receiver who seeks the direction of the court, in important matters, affecting the administration of his trust, to give notice to the parties beneficially interested in the property. But we can-

not say that this is an essential condition to the exercise by the court of its jurisdiction. Under the English practice, prior to the enactment of the general rules, an application for liberty to lease property in the hands of a receiver was made by a party and not by the receiver, " and was obtained as of course " (2 Dan. Ch. Pr. 1982; High on Receivers, § 194), without notice to the other party. In *Neale* v. *Bealing* (3 Swanst. 304, note) a motion of course was made for sequestrators to set and let the estate. It was denied, the Lord Chancellor saying, " I cannot allow this without notice to the other side, for though it is a motion, of course, to obtain liberty for a receiver to set and let, and now most orders are drawn up with such express power in them, yet the reason of both of them is that he is appointed by the court, for the management of the estate, but sequestrators have but precarious or temporary power to levy a debt, and the sequestration may be taken away to-morrow or as soon as the demand is satisfied." The court in directing a lease acts through its receiver, and, however proper it may be to require notice, there is, we think, no inflexible rule of law that it cannot act without notice, or that leases executed under its authority, without notice, are void.

The next question relates to the power of the court to modify or vacate the order so as to affect the rights of lessees who took their leases in reliance thereon. The general power of a court to modify or vacate its judgments or orders for fraud or irregularity, or where it has acted inadvertently, or improvidently, is well settled. It is true, the law protects the title of a third person, being a *bona fide* purchaser on a sale on an execution under a judgment voidable but not void, although the judgment is subsequently reversed for error (*Manning's Case*, 4 Coke, 329 ; *Woodcock* v. *Bennet*, 1 Cow. 711.) This principle does not, we think, preclude the court from modifying or vacating a summary order made improvidently in the course of an action although the rights of third persons may be affected thereby. (See *Hale* v. *Clauson*, 60 N. Y. 339, and cases cited.) The court had,

therefore, power to set aside or modify the order of October 19, 1885. But the leases were not void. The lessees acted *bona fide* in reliance upon the order of the court, and will as the affidavits tend to show, be subjected to loss if the leases are annulled. The parties who call upon the court to vacate or modify the order of October 19, 1885, waited until the final judgment of the Court of Appeals before moving. They deny that they knew of the order until after the final decision in the case. But they knew that the houses were in the occupation of tenants after May 1, 1886, and must have known that it was under some arrangement with the receiver. We think the court was authorized to award indemnity out of the fund arising on the sale under the judgment in partition, for any damages to the lessees, as a condition of granting the motion, and that nothing less will satisfy the claims of justice. We are of opinion that the order of the General and Special Terms should be affirmed, with a modification, however, declaring that the damages when ascertained shall be paid out of the fund reserved under the order of the court.

All concur.

Ordered accordingly.

On subsequent motion to amend remittitur the following order was handed down:

*Ordered.* That the remittitur herein be amended by inserting after the word "ascertained," the words "with the expenses of the reference," and also by inserting a provision further modifying the order of the General Term by striking out the award of costs and disbursements against the appellants.